**People of the State of Illinois, Plaintiff-Appellee, v. Robert S. Carr, Defendant-Appellant.**

**Gen. No. 51,209.**

First District, Third Division.

September 11, 1969.

Rehearing denied October 23, 1969.

371

■■■■

■■■■■■■■■■

■■■■■■■■■■■

Gerald W. Getty, Public Defender of Cook County, of Chicago (George Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was charged in separate indictments with unlawful possession and sale of a narcotic drug. The court found on a preliminary hearing that certain evidence had been obtained as a result of an illegal search of defendant's apartment. That evidence was suppressed and the State later nolle prossed the indictment for possession. The case proceeded to trial by jury on the charge of illegal sale of a narcotic drug. Defendant was found guilty and sentenced to serve from ten to twenty-five years in the state penitentiary. He contends on appeal that improper argument by the prosecutor deprived him of a fair trial and that the court erred in permitting the State to show that he used an assumed name. As he does not contest the sufficiency of the evidence, only a short statement of the facts is necessary.

On September 26, 1964, Ben Coldwall, a police informant, told Sergeant Robert Gats of the Chicago Police Department that he could make a purchase of morphine. Coldwall was searched, given four ten dollar bills whose serial numbers had been recorded and was driven to 114

North Parkside Avenue, Chicago, by Sergeant Gats and Detective William Nolan. At that address Coldwall went up to the defendant and a companion named Don Zork and the three entered apartment No. 103. Sergeant Gats walked along the north side of the building until he came to an illuminated window through which he was able to observe Coldwall, Zork, the defendant and a female companion in apartment No. 103. Coldwall gave defendant the four ten dollar bills for a cellophane package containing six white pills about half the size of a sugar cube. Coldwall left the apartment and was met by Sergeant Gats at the front door of the building. They returned to the apartment and after gaining admission Gats identified himself and arrested the defendant.

Detective Nolan entered apartment No. 103 shortly after defendant's arrest and was given the money and the cellophane package containing the six white pills. Upon his return to the police station he inventoried the evidence and sent the cellophane bag and its contents to the Police Crime Laboratory. He testified that the pills were very soft and brittle and that some of them had been crushed in handling. Sergeant Charles Vondrak, a police chemist, testified that chemical tests revealed that the six pills were morphine sulphate. He also stated that the contents of the bag appeared to be crushed tablets in a semipowdered form.

After defendant was arrested Sergeant Gats searched him and took his apartment keys. He used the keys to enter the apartment, which he searched and where he confiscated a quantity of drugs. The trial court found that to be an illegal search and seizure and suppressed evidence with respect to drugs obtained from the apartment.

Defendant denied selling the narcotics to Coldwall or receiving any money from him. He stated that he had been sitting with Zork's girl friend while Coldwall stayed with Zork and was unaware of any sale of narcotics. De-

373

fendant also testified that he had returned to his apartment at 149 North LeClaire Avenue to get some money for pizza.

Defendant complains of six instances of improper argument on the part of the prosecutor. The first involves a misstatement of the evidence. Defense counsel had argued that there was a discrepancy between the white powdered substance offered in evidence and the six white pills half the size of sugar cubes described in the testimony. The prosecutor in closing argument for the State answered as follows:

> "What is this talk about the six cubes of sugar? Where did that get in the evidence? From the lips of Carr. 'Ben told me he was an informer. It really shook me.' And the next thing he mentioned was that the policeman showed him six cubes of sugar and said that he found that—
>
> "MR. ROSENFIELD [Defense counsel]: That's not the evidence. I'm going to object to it. Coldwall said it was half the size of a cube of sugar.
>
> "THE COURT: The jury heard the evidence. They will decide the facts."

In point of fact the defendant did not testify as to the size of the pills. It was the informant Coldwall who described them and who testified that they were *half* the size of sugar cubes.

Defendant argues that there was a "discrepancy between the small amount of powder offered in evidence, and the six cubes, half the size of cubes of sugar, described in the testimony," and that the prosecutor's misstatement as to the size of the cubes deprived him of a fair trial. The State's evidence established a continuous chain of possession from the time the pills left the defendant until they were introduced into evidence. The State also accounted for the fact that the pills had crumbled into a semipowdered form as the result of

374

handling. We are unable to see how the defendant was prejudiced by the prosecutor's comment that it was the defendant who stated that the pills were the size of sugar cubes when the evidence revealed that they were actually only half that size. If that slight error helped anyone, it helped the defendant who argued that the quantity of white powder offered in evidence was too small to have made up the pills described even if they had disintegrated. It could not affect the merits of the case and it does not warrant reversal. People v. Jenko, 410 Ill 478, 102 NE2d 783.

Defendant next argues that it was improper for the prosecutor to imply that the informant was being protected by the State. It was defense counsel however who stated in closing argument:

> "We have Ben Coldwall, twenty-six years of age, who, since February, has been living at your expense. . . . He hasn't been in jail awaiting trial. . . . He is over there in what they call the witness quarters; jargon has it the Sherman Hotel. But it's across the street. It's not the jail . . . .
> ". . .
> "To this minute . . . we don't know who put up the $5,000 to take him from the Cook County Jail, where he belongs, and put him in the lap of luxury across the street."

The prosecutor answered this in closing argument by stating:

> "So he [Coldwall] is not living in any lap of luxury. He is there for a purpose. And you jurors didn't leave your common sense outside the door when you came in.
> "The defendant is on bond. He is out. What are your going to do; leave Coldwall outside, or are we going to protect him?"

375

Defendant contends that the prosecutor's remarks require a reversal and in support he cites People v. Herbert, 361 Ill 64, 196 NE 821, and People v. Savage, 84 Ill App 2d 73, 228 NE2d 215. In Herbert the State elicited testimony on redirect examination that police officers were detailed to guard the complaining witness' home just prior to the trial. The court found that the police guard had nothing to do with the crime for which the defendant was charged and held that it had no legitimate place in the case. In Savage the State commented in closing argument that it did not produce a corroborating witness because the defendants had threatened to kill any witness who testified against them. The instant case is distinguishable.

■■ Here it was the defense which first argued that Coldwall was being held in protective custody. In such case it has been held that the State may argue the point in response. In People v. Hampton, 24 Ill2d 558, 182 NE 2d 698, the court held (p 561):

> "And while under other circumstances it would have been highly improper to suggest that a prosecution witness had been held in custody to protect his life, the fact that Spaulding was kept in protective custody prior to trial was injected into the case by the defense on cross-examination. It thus became a proper subject for argument by the prosecution."

We conclude that the prosecutor's argument was responsive to comments made by the defense and was proper under the circumstances.

Defendant's next contention is that the prosecutor in his closing argument improperly referred to suppressed evidence. The defendant had testified that just prior to the alleged sale of narcotics to the informant he had taken a taxi to his apartment to pick up some money so that

he and his friends could order a pizza. The prosecutor argues that this story was improbable, saying:

> "Now, do you really believe that this fellow all of a sudden left the place to run out to get some money for pizza? Or isn't it more likely that after the phone call he went back to his apartment, to the cache, where he kept the narcotics, to bring it—"

(Objection by the defense overruled.)

Defendant contends that the prosecutor in making that argument was referring to the narcotics which had been seized in the defendant's apartment and later was suppressed by the trial court. He contends that the remarks would cause the jury to conclude that the prosecutor had personal knowledge of a "cache" of narcotics in defendant's apartment and thereby got to the jury indirectly evidence which the court had suppressed.

██ A prosecutor is entitled to comment on testimony given by the accused and to draw legitimate inferences therefrom. People v. Potts, 403 Ill 398, 86 NE2d 345; People v. Kemp, 29 Ill2d 321, 194 NE2d 217; People v. Allen, 73 Ill App2d 256, 219 NE2d 653. In the instant case the prosecutor prefaced his argument with "Or isn't it more likely that . . . ." It is clear that his statement was only the expression of an inference which he felt the jury should draw from the testimony presented. The statement in a hypothetical framework cannot, as the defense counsel suggests, be taken as an expression of personal knowledge by the prosecutor.

██ Defendant contends that the prosecutor improperly drew unfavorable inferences from defendant's failure to call a certain witness who could have corroborated his testimony. The prosecutor argued to the jury that if defendant's story were true, he would have produced Don Zork and the latter's girl friend to corroborate

his testimony. He also argued that defendant's statement that he was employed by his father was not corroborated by his father. The rule is that the State may not in closing argument draw adverse inferences from a defendant's failure to call a particular witness unless it is manifest that the witness is more accessible to the defendant than to the State. People v. Munday, 280 Ill 32, 117 NE 286; People v. Smith, 74 Ill App2d 458, 221 NE2d 68. The defendant in the instant case testified that he had known Zork all his life and that Zork had been going with the unnamed girl in the apartment for about a year. It is a fair inference that the defendant's friends and his father were more accessible to him than to the State.

■ Defendant next contends that the evidence did not support the prosecutor's argument that defendant had lied about his employment. Defendant had testified that he was employed by his father to take care of his property and to chauffeur him to see customers. On cross-examination he was unable to name any of his father's customers. The prosecutor in closing argument questioned defendant's truthfulness, arguing that if he worked for his father, he would have known some of his father's customers. This was a fair inference to draw from the evidence and the prosecutor's comment was proper.

■ Defendant also argues that the prosecutor improperly argued that the defense had obtained an excessive number of continuances. The prosecutor made the following statement:

> "And Counsel states that he [the informant] is living over there [the witness quarters] at your expense, but he doesn't tell you who kept continuing this case while he was living there."

Defendant cites People v. Freedman, 4 Ill2d 414, 123 NE 2d 317, to support his contention. In that case the defend-

ant was charged with indecent liberties with a child and the prosecutor in closing argument stated that defense counsel had advised the defendant immediately after the crime to become so inebriated as to appear incapable of the requisite criminal intent. That case has no application to the facts before us. In the instant case the remarks of the prosecutor were not improper under the circumstances. It is our conclusion that the defendant was not unduly prejudiced by anything in the prosecutor's closing argument.

 Defendant's final contention is that the court erred in permitting the State to show defendant's use of an assumed name. The State in cross-examination elicited from the defendant the fact that he had used an alias when he rented his apartment. Defendant argues that this was immaterial and served only to prejudice the jury. In the cases cited by defendant, People v. Dukes, 12 Ill2d 334, 146 NE2d 14; People v. Warfield, 261 Ill 293, 103 NE 979, and People v. Singer, 288 Ill 113, 123 NE 327, the defendant's use of an assumed name had nothing to do with the issues in the case and was held immaterial. Here the defendant testified that he had gone to the apartment in question to get some money to buy a pizza. It was the State's theory that he went there to get narcotics to sell to the informant. Renting the apartment under an assumed name had some relevance to its alleged use for illegal purposes. It was not improper for the prosecutor to ask the defendant if he had rented it under an alias.

We find no reversible error in the record and the judgment accordingly is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.