THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANDREW STEVENS, Defendant-Appellant.

First District (5th Division)   No. 62246

Opinion filed July 9, 1976.

Nelson I. Dunitz, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Michael R. Lewis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was convicted in a bench trial of disorderly conduct for having given the police a false report of the commission of a crime in violation of section 26—1(a)(5) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 26—1(a)(5)). On appeal, he contends that (1) the State failed to prove a prima facie case; (2) his guilt was not established beyond a reasonable doubt; (3) certain conduct of the assistant State's attorney denied him a fair trial; and (4) his conduct did not violate the general class of disorderly conduct regulations, in that there was no breach of the public peace and quiet.

At trial, the only witness for the State was police officer Springer, who went to an apartment building in response to a radio call. Two plainclothes officers arrived before him, and they left when he came. In a hallway of the building he met defendant, who said $450 had been taken from him at gunpoint and that he had followed the man who had robbed him to the apartment next to where he and the officer were standing. At the request of the officer, someone inside opened the door, and defendant pointed out another party in the apartment as the alleged offender. This person was then placed under arrest, but a search for a weapon was unproductive. The officer testified further that he had a conversation with the individual arrested, and then he stated that, "Upon talking to Mr. Stevens again, it was found out that there was no robbery at all; that he had given this money to the alleged third party offender here and that he wanted his money back." He could not recall defendant's exact words, but he was told that the exchange of money was "to get together something." On cross-examination, the officer answered that he found no money "on the arrestee" and that defendant refused to sign a complaint at the station.

Defendant testified that he went with his friend, Walter Johnson, to meet a certain party to purchase some wholesale suits for $400. At the meeting, the party acted as if he had a gun and demanded his money. Defendant turned over what he had, and the man then fled. He and Johnson followed the robber to an apartment in a nearby building, where defendant knocked on the door and demanded the return of his money. While they were in the hallway, the building manager came up and asked them to leave and, when he told her he would not go until he got his money, she said she was going to call the police. Later, two plainclothes officers came, and he told them that the man in the apartment "got my

money and he wouldn't give it to me." The alleged robber finally agreed to give the money back before Officer Springer arrived.

On cross-examination, it was developed that defendant intended to buy six suits for $450 from a man named J. B. He denied ever having dealt with the party before and had known of J. B. through Walter Johnson. He admitted refusing a request of Officer Springer to sign a complaint against J. B. and stated he received his money back the next day.

Walter Johnson then testified as a defense witness that he had accompanied defendant to the meeting with J. B., who was supposed to have some suits to sell defendant. At this meeting "J. B. went in his pocket like he was going to take out a pistol." Defendant gave his money to J.B. when the latter "acted like he was going to take it * * * and the guy ran up in the apartment building." He and defendant followed J. B. into the building and up to a seventh-floor apartment. Johnson stated he had been in the apartment before and knew he could find J. B. there. He was still at the apartment when the landlady said she was going to call the police.

On cross-examination, Johnson stated that he left the apartment building before the police came; that the apartment was about half a block from the scene of the alleged robbery; and that J.B. didn't ask for or take anything from him at the time of the alleged robbery.

OPINION

■■ Defendant first contends that the State failed to prove the necessary elements of the offense of disorderly conduct. Section 26—1(a)(5) of the Criminal Code of 1961 provides that:

> "(a) A person commits disorderly conduct when he knowingly:
>
> * * *
>
> (5) Transmits in any manner to any peace officer, public officer or public employee a report to the effect that an offense has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense has been committed; * * * ." (Ill. Rev. Stat. 1975, ch. 38, par. 26—1(a)(5).)

We believe it clear from an examination of the police officer's testimony that the elements of the offense charged were established. He testified that defendant informed him that he had been robbed, that he had a conversation with the alleged robber, and then had another talk with defendant, who told him he had given the money to the alleged offender and wanted it back. From these conversations he concluded there had been no robbery. We believe that from this testimony the trial court could properly have found that defendant knowingly reported a robbery which he knew had not been committed.

Defendant next argues he was not proved guilty beyond a reasonable doubt. The resolution of this issue depends upon the credibility of the witnesses, and it is fundamental that matters which go to credibility are to be resolved by the trier of fact. (*People v. Boney*, 28 Ill. 2d 505, 192 N.E.2d 920.) In a bench trial, the court as the fact finder is peculiarly suited to determine questions of truthfulness, and a reviewing court should not reverse its judgment unless it is so unsatisfactory as to justify a reasonable doubt of guilt. *Boney; People v. Hampton*, 44 Ill. 2d 41, 253 N.E.2d 385.

■■ It was inherent in the judgment here that the court found that the testimony of Officer Springer was more credible than that of defendant and his friend and, from our examination of the record, we do not believe it to be palpably contrary to the weight of the evidence. In this regard, we note certain discrepencies in the testimony of defendant. He initially testified that the purchase was for $400; yet, on cross-examination, he stated the amount to have been $450. Furthermore, it would seem improbable that defendant would be robbed while the money or valuables of his companion were not taken or even demanded. In addition, the court could have found implausible defendant's statement that he and his companion followed the allegedly armed robber to the apartment to demand repayment. In light thereof, we are of the opinion that the evidence justifies the court's finding of guilt beyond a reasonable doubt. See *Hampton; People v. Smith*, 12 Ill. App. 3d 507, 299 N.E.2d 492.

Defendant next contends that his right to a fair trial was impaired when the court, during defendant's cross-examination, asked certain rhetorical questions indicating that defendant was engaged in a transaction other than the purchase of suits. It appears that, on direct examination, defendant testified that he was in the area of 75th Street and Exchange for the purpose of buying some suits from the alleged offender. On cross-examination, a line of inquiry was pursued in which defendant was asked about prior dealings with him. The prosecutor questioned defendant concerning the number of suits he planned to buy and whether he had ever dealt with the alleged offender before.

The permissible latitude of cross-examination is within the sound discretion of the trial judge (*People v. DuLong*, 33 Ill. 2d 140, 210 N.E.2d 513), and only in the case of a clear abuse of that discretion resulting in manifest prejudice to the defendant, will a court of review interfere (*People v. Burris*, 49 Ill. 2d 98, 273 N.E.2d 605). It is well established that a matter developed during a defendant's direct examination is a proper subject of cross-examination. *People v. Bridgeforth*, 51 Ill. 2d 51, 281 N.E.2d 617, 54 A.L.R. 3d 757; *People v. Clark*, 9 Ill. App. 3d 998, 293 N.E.2d 666.

■■ Here, the questions complained of concerned a matter which was

initiated by defendant on direct examination and, in view thereof, we believe the trial court properly permitted cross-examination thereon.

■■ Defendant also complains that the prosecutor "used inferences which were introduced improperly in the record in his closing argument to influence the Judge." No reference is made to any specific portion of the argument, and we view this complaint to be directed generally to comments which indicated plaintiff was engaged in a transaction with J.B. other than for the purchase of suits of clothing. It it a well known rule of law that a prosecutor is entitled to comment on testimony that is given by an accused and to draw legitimate inferences therefrom. (*People v. Hairston*, 46 Ill. 2d 348, 263 N.E.2d 840; *People v. Carr*, 114 Ill. App. 2d 370, 252 N.E.2d 912.) We have stated above our belief that the questions concerning that transaction were proper and, from our examination of the argument, we believe the comments in that regard were within the legitimate inference guidelines.

Finally, defendant contends that his behavior and language during the incident in question were not such as to fall within the disorderly conduct statute under which he was convicted. It appears to us that defendant's actions were precisely the type proscribed by the statute; nonetheless, we will consider his contention that to be convicted of disorderly conduct there must be conduct which is likely to provoke, or which does provoke, a breach of the public peace and quiet or presents a clear and present danger of violence.

■■ ■ We do not accept defendant's restrictive interpretation of "breach of peace." As stated in *United States v. Woodard* (7th Cir. 1967), 376 F.2d 136, 141, in upholding the validity of the Illinois Disorderly Conduct Statute:

> " 'The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others.' Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S. Ct. 900, 84 L. Ed. 1213 (1940). The term connotes conduct that creates consternation and alarm. It is an indecorum that incites public turbulence; yet violent conduct is not a necessary element. The proscribed conduct must be voluntary, unnecessary, and contrary to ordinary human conduct."

Here, defendant's conduct was such that the building manager was attracted to the scene and believed it necessary to call the police; that at least three officers were taken from other duties and sent to the apartment building; that one police officer was required to enter the apartment in which there was an allegedly armed man; and that a man was wrongly arrested and fingerprinted. These factors indicate that a potentially

explosive situation existed because of defendant's conduct. Considering the totality of the circumstances, we believe his behavior was properly considered as disorderly conduct under the statute involved.

In light thereof, we affirm the judgment of the trial court.

Affirmed.

LORENZ, P. J., and DRUCKER, J., concur.