THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MILTON SMITH, Defendant-Appellant.

First District (1st Division)    No. 80-2394

Opinion filed March 15, 1982.

Ralph Ruebner and Phillip J. Zisook, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Martin D. Reggi, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Milton Smith was found guilty of attempt robbery after a jury trial and was sentenced to a term of seven years. On appeal, defendant contends that: (1) he was deprived of his right to a fair trial because the trial court permitted the prosecution to question him about his prior heroin addiction and his general knowledge of drugs and permitted the prosecution to comment upon this during closing argument; (2) he was deprived of his sixth amendment right to confront witnesses where the trial court precluded him from cross-examining a State's witness concerning the witness' previous conviction for robbery; and (3) the trial court erred in sentencing defendant to a term of seven years where the maximum term for such an offense is not less than two years and not greater than five years.

Prior to trial, the defense made a motion *in limine* to prevent the prosecution from impeaching defendant with a 1975 theft conviction and a 1978 aggravated battery conviction. The State also made a motion *in limine* to preclude the defense from impeaching its chief witness with a 1977 robbery conviction. Defendant opposed the State's motion because the jury should be able to consider all factors which weigh on the credibility of the witness. The court granted both motions *in limine* and stated that the danger of prejudice in interrogating either defendant or the State's witness about prior convictions outweighed the probative value of the testimony.

The prosecution's first witness was Gregory Kowalski. He stated that on the evening of September 5, 1979, at 7:30 p.m., he was working at a service station on Fullerton Avenue in Chicago. He testified that he was the sole employee on duty that evening and that he was in possession of approximately $200 to $300. When Kowalski returned from attending to a customer, defendant was in the office of the station. Another customer who had been in the office left, and Smith then purchased a package of cigarettes. He stated that he removed the money from his pocket to make change for Smith's purchase, defendant put a gun to his side and said, "Give me the money or else I'll kill you." Kowalski stated that he then ran from the station with the money. According to Kowalski, he stopped a passing police car in the intersection of Fullerton and Pulaski. While he was stopping the police car, he stated that he looked back and saw defendant throw the weapon onto the roof of the station. He testified that he told the officer about the weapon on the roof. According to the witness, the police officer requested Smith to approach him. Other police officers who subsequently had arrived asked Kowalski if there was a way to retrieve the gun from the roof. Kowalski stated that he climbed onto the roof, found the gun and dropped it to the ground. Upon being shown the weapon in court, he identified it as being the gun which was used by Smith. It was determined that the weapon was a toy. On cross-examination, he testified that the police did not tell him to avoid getting his fingerprints on the weapon when he retrieved it from the roof.

Officer Salvatore Tenuta testified that on the evening of the incident, he received a call over his radio about a man with a gun and that at the time he received the call, he was about four or five blocks from the service station. Tenuta stated that when he arrived on the scene, he saw Kowalski standing in the middle of the street. He stated that he searched Smith and then asked, "Where's the gun at?" According to Tenuta, Kowalski told him that defendant threw the weapon on the roof. Tenuta then called for assistance and after other officers arrived, he left the scene and returned to his patrol.

Officer Joseph Drasutis was the final witness presented by the State

during its case-in-chief. Drasutis stated that when he arrived on the scene, Officer Tenuta was speaking with Kowalski and Smith. Drasutis testified that when he searched Smith, he was unarmed. Drasutis stated that Kowalski climbed onto the roof of the station, found a plastic gun and threw the weapon at the officer's feet. On cross-examination, Drasutis stated that he did not anticipate any problems with fingerprints because the weapon was plastic. He stated that an evidence technician was not called to examine the toy gun for fingerprints. Finally, Drasutis testified that it was not common police practice to permit civilians to participate in the recovery of evidence.

Defendant Milton Smith testified on his behalf. He stated that on the evening in question, he went to the service station to purchase marijuana from Kowalski. According to Smith, he had met Kowalski a few weeks earlier and had purchased a quarter pound of Columbian marijuana from him for $125. Smith said that he still owed $20 to Kowalski for his purchase. Smith stated that he had agreed to procure amphetamines for Kowalksi and that he had planned to purchase marijuana from Kowalski. Smith stated that on the evening of September 5, he went to the service station to purchase marijuana. Smith stated that he had $56, eight Talwin and eight parabenzamine tablets on his person. Smith testified that as he exited the bus near the station, he had noticed a number of police vehicles across the street in a restaurant parking lot. Smith stated that he then went into the station and asked Kowalski about purchasing marijuana. According to Smith, Kowalski declined interest in purchasing any pills from Smith. After the conversation concluded, Smith stated that Kowalski ran out of the station. Smith then left the station. He stated that he threw a soft drink can into the alley on his way back to the bus stop. He testified that he noticed that Kowalski was running toward a police car which was across the street.

Defendant stated that he was on the premises of the service station when he saw Kowalski conversing with a police officer. He stated that he stopped and subsequently was accused by Kowalski of attempting to rob Kowalski, which Smith denied. Defendant testified that the police permitted Kowalski to climb onto the roof of the service station and Kowalski discovered a plastic gun. Smith was subsequently arrested. Smith told the officer that he had come to the station to purchase marijuana from Kowalski and he pointed to an envelope which was lying near one of the gasoline pumps. Defendant stated that he told the officer that the envelope contained marijuana. Smith also claimed that he told the officer that he could be fingerprinted to prove that he did not handle the plastic gun.

On cross-examination, Smith denied that he was a heroin addict, but admitted that at one time he had been a heroin addict. Smith stated that he was aware that "T's and Blues" (Talwin and parabenzamine) were

used as a heroin substitute. When asked if he was familiar with drugs, Smith stated that he was familiar with marijuana. Counsel's objection to questioning defendant about his familiarity with heroin and "T's and Blues" was overruled, and Smith replied that he was acquainted with those drugs. The State then asked whether Smith could describe the fashion in which most drugs are packaged and he stated "Not as well as marijuana." An objection to a question concerning the packaging of heroin was sustained. Finally, Smith stated that he recalled a prior conversation with Assistant State's Attorney Steven Farone where he told Farone that he threw a soft drink can. He stated that he could not remember whether he told Farone if he threw the can into the alley or onto the roof.

In rebuttal, the State called Farone and he testified that defendant told him that defendant threw a soft drink can onto the roof of the service station. Officer Drasutis was recalled and he stated that Smith never mentioned anything about an envelope containing marijuana. He also stated that defendant never mentioned anything about fingerprints on the gun. Drasutis testified that a search of Smith did not disclose any "T's and Blues."

During closing argument, the prosecutor stated, "[W]hat this case is about [is] who is lying and who is telling the truth." Objection was overruled to comments about defendant's former heroin addiction and present marijuana use. Counsel objected to the State's noting that Smith stated that he was going to trade marijuana for "T's and Blues" which are a heroin substitute. The court overruled the objection. On rebuttal, the State commented that the credibility of witnesses was a crucial factor in the case and that the issue narrowed to which witness did the jury believe. The prosecution told the jury that they could tell that Smith was an ex-addict and that it was apparent that he was familiar with the drug environment.

The jury found defendant guilty of attempt robbery. (Ill. Rev. Stat. 1977, ch. 38, par. 8—4.) During the sentencing hearing, the State informed the court that defendant had been convicted of aggravated battery and theft and that Smith could be sentenced under the extended-term provisions of the sentencing statute. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2.) In sentencing defendant to a term of seven years, the court noted that he had been on parole for three or four months when the crime was committed. On two occasions, the court mentioned that this conviction was defendant's third felony conviction.

Defendant first contends that the trial court erred in permitting the State to cross-examine him about his prior drug use and familiarity with drugs and that the court erred in permitting the prosecution to comment about this testimony during closing argument. Defendant argues that

evidence concerning a defendant's use of narcotics is inadmissible in a prosecution for an offense that does not involve narcotics. (See *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077.) Defendant urges that the facts presented in this case warrant reversal under *People v. Novak* (1965), 63 Ill. App. 2d 433, 211 N.E.2d 554. In *Novak*, a reference to narcotics was made during direct examination of defendant. On cross-examination, the prosecution questioned defendant about his use of drugs on the day of the crime. He denied that he used drugs on the day of the crime, and there were no objections concerning that question. During rebuttal, the State called a police officer who testified that he observed needle marks on defendant's arm when the officer was at the scene of the crime. On appeal, the appellate court reversed defendant's conviction because the testimony of the police officer was deemed to be immaterial in a prosecution for burglary and was deemed to be highly prejudicial and inflammatory. Defendant argues that the instant case presents a stronger case for reversal than does *Novak*. First, defendant claims that the use of drugs in *Novak* was a contested matter, whereas here, defendant was forced to admit his prior addiction on cross-examination. Second, in *Novak*, the testimony involved drug use on the day of the crime, whereas in this case, the testimony concerned defendant's past drug use. Third, the testimony in this case was more extensive than the testimony in *Novak*. Finally, the prosecutor in this matter repeated and emphasized defendant's prior addiction and knowledge of drugs in his closing argument as did the prosecution in *Novak*, but also the State made reference to defendant herein as an ex-addict. Defendant asserts that the statements made during the State's closing argument require reversal because they were improper and must have contributed to his conviction. See *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.

Initially, the State urges that defendant has waived our consideration of this issue by failing to make a timely objection and to move to strike the testimony. (See *People v. Haywood* (1978), 60 Ill. App. 3d 236, 376 N.E.2d 328, *cert. denied* (1979), 440 U.S. 948, 59 L. Ed. 2d 637, 99 S. Ct. 1427.) The State also contends that the defense opened the area concerning defendant's drug use on direct examination and that it was proper for the prosecutor to question defendant about this matter on cross-examination. (See *People v. Stevens* (1976), 40 Ill. App. 3d 303, 352 N.E.2d 352; *People v. McClaine* (1971), 132 Ill. App. 2d 669, 270 N.E.2d 176.) The State argues that it is proper for the State to comment upon relevant evidence and to draw legitimate inferences from that evidence. (See *People v. Carr* (1969), 114 Ill. App. 2d 370, 252 N.E.2d 912.) In the instant case, the State claims that defense counsel's questions concerning defendant's alibi that he was at the service station to complete a drug transaction with Kowalski provided a basis for the prosecutor to interrogate defend-

ant about his drug habits and knowledge. The State also urges that the testimony was the result of defendant having placed at issue the defendant's drug use and that, therefore, the testimony was material and relevant.

■■ ■ As a general rule, testimony concerning a defendant's use of or addiction to drugs is not admissible in a prosecution that does not involve drugs. (See *People v. Smith* (1967), 38 Ill. 2d 237, 231 N.E.2d 185; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077.) However, in the instant case, defendant testified on direct examination that he went to the service station in possession of "T's and Blues" and was intending to complete a transaction involving marijuana. Defendant cannot complain that it was error to permit the State to question defendant about his use of and familiarity with drugs where it was defendant himself who raised the issue and "opened the door" on direct examination. (See *People v. Stevens* (1976), 40 Ill. App. 3d 303, 352 N.E.2d 352.) We also do not find that it was error for the prosecution to comment during closing argument upon defendant's familiarity with and use of drugs since it was done in the context of commenting upon the defense proffered by defendant and is, therefore, a legitimate inference which the State drew from the evidence. See *People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.

Defendant next argues that the trial court erred in refusing to permit his attorney to cross-examine Gregory Kowalski about Kowalski's 1977 robbery conviction. In support of his contention, defendant relies upon *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, and argues that *Montgomery* requires that the trial court balance the probative value of eliciting testimony concerning prior convictions versus the prejudicial value of such testimony. Defendant asserts that such testimony would have been a factor which the jury would consider in evaluating the credibility of Kowalski's testimony and that, therefore, the trial court erred in barring counsel from questioning the witness. (See *People v. Thomas* (1978), 58 Ill. App. 3d 402, 374 N.E.2d 743.) The State urges that the admission of a prior conviction for impeachment purposes rests within the sound discretion of the trial court (*People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175), and that the trial court is given wide latitude in making such a determination. (See *People v. Martinez* (1978), 62 Ill. App. 3d 7, 377 N.E.2d 1222.) The State argues that the trial court used its discretion in applying the *Montgomery* balancing test and that a reviewing court should assume that the court gave appropriate consideration to all relevant factors even though the trial judge did not set forth his rationale for his decision on the record. See *People v. Fought* (1980), 85 Ill. App. 3d 732, 407 N.E.2d 231.

■■ We believe that the trial court erred in refusing to permit counsel for defendant to attack the credibility of the State's witness through question-

ing about a prior conviction. *Montgomery* sets forth the rule concerning impeachment of a witness by a prior conviction. The rule requires that the conviction be for an offense punishable by imprisonment of a term greater than one year or that the conviction be for a crime involving dishonesty or false statement regardless of the punishment. Robbery, being a species of theft, is an offense which involves dishonesty (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563), and which also is punishable by a term in excess of one year (Ill. Rev. Stat. 1979, ch. 38, par. 18—1). Since Kowalski's 1977 robbery conviction is a proper subject with which to impeach his credibility, we now turn to the *Montgomery* balancing test.

When defendant presented his motion *in limine* to prevent the State from impeaching defendant with his prior convictions, the State countered with a similar motion to prevent impeaching its witness with his prior conviction. Defendant argues that this presented the appearance that the two motions were to be balanced against one another as highlighted by the statement by the court during its ruling on the two motions. The court first indicated that it could grant the defendant's motion and deny the State's motion. The court then stated:

> "Certainly one [motion] doesn't outweigh the other. But it seems the same theory applies. Two witnesses that may testify in this Court may have prior convictions of felonies in this State within the last ten years, and if the jury would be so prejudiced by hearing prior convictions, if it would in any way affect their thinking or prejudice them against the party, and if it did in fact outweigh the probative value of the testimony, it would seem to apply to all witnesses in the case."

This statement would seem to support defendant's contention that the court applied a uniform standard to defendant and the State's witness in its application of *Montgomery*. *Montgomery* requires the court to balance the probative value of the impeachment with prior convictions against the prejudicial value of such impeachment. In doing so, the trial court must consider the respective interests of the witnesses when applying *Montgomery*. In the instant case, the State's witness was not on trial for any offense and the only effect of permitting the impeachment with a prior conviction would be the credibility of the witness. Defendant, however, may be affected through this method of impeachment because the jury may consider his prior convictions in determining his guilt or innocence, rather than the evidence of the present charges against him. (See *People v. Cox* (1981), 100 Ill. App. 3d 272, 426 N.E.2d 1050; *People v. Thomas*; *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064.) Unlike the situation in *Cox* where there was more than one eyewitness to the offense, this case involved the repeated pitting of the testimony of defendant

versus the testimony of the State's witness. This matter was further brought to the attention of the jury in the State's closing argument during which the State characterized the case as being about "who is lying and who is telling the truth."

■■ We believe that the trial improperly limited the cross-examination and impeachment of the State's chief witness and that counsel for defendant should have been permitted to attack the credibility of the witness with his prior robbery conviction since it is a matter for the jury to consider the effect of this evidence on the reliability and credibility of the witness. (See *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526; *People v. Rufus* (1982), 104 Ill. App. 3d 467, 432 N.E.2d 1089.) Therefore, this matter must be remanded to the trial court for a new trial. *People v. Thomas; People v. Jacobs.*

Since we have determined that defendant is entitled to a new trial, we need not reach the issue of whether defendant's sentence exceeded the statutory maximum.

Accordingly, this matter is hereby reversed and remanded to the circuit court of Cook County for a new trial.

Judgment reversed and remanded.

GOLDBERG and O'CONNOR, JJ., concur.