In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1021

Eugene Sparing,

Plaintiff-Appellant,

v.

Village of Olympia Fields
and Officer James Keith,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 5479--Charles R. Norgle, Sr., Judge.

Argued September 18, 2000--Decided September 19, 2001

Before Easterbrook, Ripple, and Williams,
Circuit Judges.

Williams, Circuit Judge.  Eugene Sparing
sued Officer James Keith for alleged
Fourth Amendment violations, stemming
from his arrest in his home. He also sued
Keith and the Village of Olympia Fields
under the Illinois tort of malicious
prosecution. The Village and Keith moved
for summary judgment, with Keith
asserting a defense of qualified
immunity. Relying on our decision in
United States v. Berkowitz, 927 F.2d 1376
(7th Cir. 1991), the district court
rejected Sparing's Fourth Amendment
warrant claim. In addition, the district
court found probable cause for Sparing's
arrest on a closely related offense and
rejected Sparing's Fourth Amendment
probable cause and state law malicious
prosecution claims. Sparing appeals, and
we affirm.

I.  BACKGROUND

A.  The Facts

   Sparing's arrest arose out of an alleged
scheme organized by a friend named David
Smith. Smith filed a criminal report with
the Olympia Fields Police Department on
July 23, 1996. In his complaint, Smith
alleged that he fired Tom Sanfratello on

May 31, 1996, and that Sanfratello later stole files from the office and forged two checks made out to himself. Smith also stated that on the morning of July 9, 1996, Sparing saw Sanfratello in the office. According to Smith, Sparing knocked on the window to get Sanfratello's attention, but Sanfratello did not respond.

In mid-August, Officer Keith called Sparing to confirm his part of Smith's story. Sparing did. Keith next interviewed Sanfratello, who disputed the story in several respects but admitted to signing the checks because he was a signatory on the account and was owed money by Smith. He also admitted to taking files, but claimed to have returned them to Smith. Sanfratello also told Keith that he previously had a conversation with Sparing's secretary, Linda Parker, who told him that she had a facsimile sent by Smith to Sparing and that she believed that they were "up to no good." Sanfratello provided a copy of that fax to Keith; it read:

Gene

July 9, 1996 at 2:45 am observed Tom at office copying files from computer and photocopying. You knocked on windows and Tom ignored you. You left and went home.

Thanks

David

The next day, Keith had a telephone conversation with Parker. According to Keith, Parker said that after receiving the fax from Smith, she made a copy and gave the original to Sparing, who replied, "Dave wants me to perjure myself."

The following day, Parker telephoned Keith, recounting to him an encounter she recently had with Sparing. She said that Sparing had contacted her to have lunch and that when he picked her up he asked with whom she had been talking that week. Parker initially feigned ignorance, but Sparing persisted. He drove her by the Olympia Fields Police Department to "refresh [her] memory," and again asked with whom she had been talking, this time informing her that a friend of

Sanfratello had already put him in the know. She then admitted to talking with the police about the fax. Sparing, according to Parker, replied, "I thought you were my friend. How could you do this to me? Don't you know that this could lead to criminal charges against me?" Parker told Keith that Sparing then took her back home, told her to get out of the car and that she was fired. He also told Parker that he was evicting her from the house she was renting from him and taking back his van on which she was making payments. Later that day, Keith spoke with Parker again, and she told him the same story.

After the meeting with Parker, Keith went to Sparing's house and knocked on the door. Sparing answered the door, and Keith asked that he identify himself, which he did. At that moment, Sparing was still standing inside his home behind his closed screen door, and Keith was standing outside. Keith then advised Sparing that he was under arrest./1 To which, Sparing inquired whether he had a warrant. Keith stated that he did not, but rather that he had probable cause. Sparing asked whether he could place something down, then turned, and walked away from the screen door further into his home. Keith entered the residence, taking several steps inside. Sparing came back to Keith, and they both left the house.

B.  District Court Proceeding

Sparing filed a lawsuit against the Village, Keith, and Officer William Bendar, alleging violations of federal civil rights law as well as Illinois state law./2 Sparing alleged in his complaint that his arrest was in violation of the Fourth Amendment, and he sought damages under 42 U.S.C. sec. 1983. Specifically, Sparing complained that Keith arrested him in his home without a warrant and without probable cause. He also alleged that the Village and Keith maliciously prosecuted him in violation of Illinois tort law.

The Village and Keith moved for summary judgment. Keith asserted an affirmative defense of qualified immunity. The district court held that Sparing had failed to demonstrate a constitutional violation and that Keith was entitled to

qualified immunity. The district court concluded that the arrest did not violate the Fourth Amendment because Sparing acquiesced to Keith's entry to complete an arrest announced outside his home, and because probable cause existed for an offense closely related to the one for which Sparing was arrested. Having found probable cause for the arrest, the district court also concluded that Sparing could not meet the elements of malicious prosecution. The district court then entered judgment in favor of the Village and Keith. This appeal followed.

## II.  ANALYSIS

### A.  Fourth Amendment and Section 1983

Sparing alleges two Fourth Amendment violations pursuant to section 1983 against Officer Keith. He claims that Keith unlawfully entered his home without a warrant to effectuate an arrest and unlawfully arrested him without probable cause. Both claims are subject to a defense of qualified immunity. We begin our analysis with the standard for qualified immunity, and then we proceed to apply that standard to each claim.

#### 1.  Qualified Immunity.

Public officials performing discretionary functions are generally entitled to qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (internal quotation marks omitted) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). They are accorded this ample protection not as a license to violate constitutional rights without recourse nor as an excuse to turn a blind eye to the requirements of the law, but to preserve the vigilance of those individuals vested with the obligation to protect the public interest in the face of ambiguity. See Hunter v. Bryant, 502 U.S. 224, 228-29 (1991); see also Malinowski v. DeLuca, 177 F.3d 623,

626-27 (7th Cir. 1999) (articulating policy reasons behind the immunity).

When presented with a defense of qualified immunity, courts must (1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation. Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001); Layne, 526 U.S. at 609; Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999). Although qualified immunity is an affirmative defense, the burden of defeating an assertion of qualified immunity rests with the plaintiff. Spiegel, 196 F.3d at 723; Clash v. Beatty, 77 F.3d 1045, 1047-48 (7th Cir. 1996).

In this case, the district court, in granting summary judgment, found that Sparing could not establish a deprivation of an actual constitutional right and therefore did not fully address the second part of the standard for qualified immunity. We review the district court's judgment on the basis of qualified immunity de novo. Jones v. Watson, 106 F.3d 774, 777 (7th Cir. 1997). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the non-moving party, and draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

2. Warrantless arrest in the home--the significance of Payton, Watson, Santana, and Berkowitz.

Sparing argues that Keith entered his home without a warrant or his consent to effectuate an arrest, which constituted an unreasonable search in violation of the Fourth Amendment and in particular the Supreme Court's holding in Payton v. New York, 445 U.S. 573 (1980). Keith responds that Sparing acquiesced to his slight entry to complete the arrest after he announced it outside Sparing's home, which is consistent with Payton and indistinguishable from our holding in United States v. Berkowitz, 927 F.2d 1376 (7th Cir. 1991). For the reasons stated below, we believe that the entry into Sparing's home without a warrant to effectuate or complete the arrest

(although with probable cause) was unreasonable and therefore a violation of the Fourth Amendment.

Two Fourth Amendment principles set the backdrop against which we analyze this case. First, police officers may constitutionally arrest an individual in a public place (e.g., outside) without a warrant, if they have probable cause. United States v. Watson, 423 U.S. 411, 417-24 (1976). Second, police officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause. Payton, 445 U.S. at 585-90. What distinguishes these two cases is that the latter involves an entry (i.e., a search) into the home, a place where individuals enjoy an especially heightened Fourth Amendment protection. See id. at 585 ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (internal quotation marks omitted) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). The former does not. A search of the home without a warrant is a well-settled violation of the Fourth Amendment, and the Supreme Court in Payton simply made clear that it is no less so when the search is conducted in order to seize (i.e., by an arrest) a person, rather than property. See id. at 585-88.

At first blush, then, the lines appear clear. Intrusion into the home without a warrant "by even a fraction of an inch," is too much. Kyllo v. United States, 121 S. Ct. 2038, 2045 (2001) (internal quotation marks omitted) (quoting Silver man v. United States, 365 U.S. 505, 512 (1961)). The lines are not so clear, however, because exactly where outside ends and where the home begins is not a point immediately obvious. Splitting fractions of an inch can be a very treacherous endeavor, producing arbitrary results. But we need not pull out our rulers and begin to measure. Under the Fourth Amendment, the point must be identified by inquiry into reasonable expectations of privacy. United States v. Santana, 427 U.S. 38, 42 (1976); Katz v. United States, 389 U.S. 347 (1967).

The Supreme Court has already considered

the question of dividing outside from inside when the home is involved, although not completely resolving the question, in United States v. Santana, supra. In Santana, the Court held that an individual voluntarily standing in the threshold of her home (i.e., in the middle of an open doorway) is outside rather than inside the home for purposes of the Fourth Amendment. Santana, 427 U.S. at 42. The Court reasoned that an individual voluntarily standing in an open doorway has knowingly exposed herself to "public view, speech, hearing, and touch" just as if she were standing outside, in a public place. Id. In those places, and thus in an open doorway, under those circumstances, the Watson rule, rather than the Payton rule, applies. Id.; see also Katz, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

But what if the individual is not voluntarily standing in an open doorway, but answers a knock at the door, standing by a "fraction of an inch" behind an open doorway? We still apply Santana-type "public view, speech, hearing, and touch" analysis to aid in the determination of whether a reasonable expectation of privacy exists. To answer that Payton established "a firm line at the entrance to the house," Payton, 445 U.S. at 590, is to ignore an unmistakable circularity--the question is where is the "entrance to the house," which in these circumstances must be answered by consideration of reasonable expectations of privacy.

We addressed precisely this question in United States v. Berkowitz, supra, acknowledging that when an individual voluntarily stands behind an open doorway--fractions of an inch "inside the home"--ordinarily, for purposes of the Fourth Amendment, she stands outside, in a public place. See Berkowitz, 927 F.2d at 1386-87; cf. Santana, 427 U.S. at 42. But, we said, the inquiry does not end there. We also recognized that a person does not surrender reasonable expectations of privacy in the home by simply answering a knock at the door, and we therefore declined to apply Santana in toto./3 Berkowitz, 927 F.2d at 1387. Instead, we held that an individual

retains the right to be free from physical intrusion into the home by police officers without a warrant seeking to effectuate an arrest, but the right could be waived in that circumstance by acquiescence (rather than consent) to a slight entry. We stated our holding as follows: if the police go to an individual's home without a warrant, knock on the door, announce from outside the home that the individual is under arrest when she opens the door to answer, and the individual acquiesces to a slight entry to complete the arrest,/4 the entry is reasonable under the Fourth Amendment and consistent with Payton. Id.

Berkowitz, however, did not overturn longstanding Fourth Amendment precedent that absent exigent circumstances, police without a warrant must obtain an individual's valid and voluntary consent before entering the home to effectuate or complete an arrest. See, e.g., Steagald v. United States, 451 U.S. 204, 214 n.7 (1981); Reardon v. Wroan, 811 F.2d 1025, 1027-28 (7th Cir. 1987). As we have said, Berkowitz only endorsed as reasonable under the Fourth Amendment, a slight entry into the home to complete an arrest announced outside the home when the individual acquiesced to the entry while standing fractions of an inch behind the threshold of her home with the door open. See Berkowitz, 927 F.2d at 1386-87.

This case does not fit within the thin middle ground established by Berkowitz, but is a case where Payton applies. What puts this case beyond Berkowitz--as well as Santana and Watson--and is most critical here, is that Sparing stood inside his home, behind his closed screen door. He was neither in a public place, e.g., outside (Watson),/5 voluntarily in an open doorway, also a public place (Santana), or answering a knock at the door and standing fractions of an inch behind an open doorway (Berkowitz). Because we are guided not by the "common law of property," Santana, 427 U.S. at 42, but by the Fourth Amendment privacy interest as identified in Katz, this difference is significant. Sparing was not exposed to "public view, speech, hearing, and touch" as if he were standing outside, in a public place (voluntarily or otherwise). As a consequence, we apply Payton--Sparing did not surrender any reasonable expectations

of privacy in his home. Without a warrant, this arrest could only be completed if Sparing opened his screen door, and stepped outside of his home or acquiesced to a slight entry to complete the arrest. For Keith to enter the home without a warrant, as he did in this case, he first needed Sparing's consent.

We need not question the validity and voluntariness of consent in this case, because no evidence of consent is present. Because Sparing did not consent to Keith's entry into his home, Keith's entry without a warrant to effectuate or complete the arrest in Sparing's home was unreasonable and a violation of the Fourth Amendment. We pause here, momentarily, to reiterate what seems to have been lost from our discussion in Berkowitz: there was no reason in this case not to get a warrant and every reason to obtain one. See Berkowitz, 927 F.2d at 1388 ("Obtaining a warrant in the first place would have prevented these potential problems, to say nothing of the time it would have saved at trial and on appeal litigating the legality of [the] arrest."). When time permits, officers who elect not to obtain a warrant unnecessarily risk the type of constitutional violation involved in this case.

Although Sparing has demonstrated a constitutional violation, he cannot show that the violation was clearly established under the second part of the standard for qualified immunity. Indeed, we are in agreement with the First Circuit in concluding that the law surrounding Fourth Amendment "doorway arrest" questions, particularly on the facts of this case, was not sufficiently settled or defined at the time of the arrest to defeat qualified immunity in this case. See generally Joyce v. Town of Tewksbury, 112 F.3d 19, 22 (1st Cir. 1997) (en banc). Thus, Keith was appropriately entitled to summary judgment for Sparing's Fourth Amendment warrant claim under section 1983./6

3.  Arrest without probable cause.

Sparing next argues that the district court employed a "fanciful view of Illinois law and a warped reading of the record" in concluding that his participation in Smith's scheme could

have provided Keith with probable cause to believe that he had committed the offense of disorderly conduct. Therefore, he argues, the district court erred in granting summary judgment to Keith on his Fourth Amendment probable cause claim./7 Sparing contends that the section of the Illinois disorderly conduct statute under which the district court found probable cause for the arrest requires a written report and that the report must falsely identify an offense, not simply acts that may be part of an offense.

The disorderly conduct statute provides:

(a) A person commits disorderly conduct when he knowingly:

. . . .

(4) Transmits or causes to be transmitted in any manner to any peace officer, public officer or public employee a report to the effect that an offense will be committed, is being committed, or has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense will be committed, is being committed, or has been committed[.]

720 Ill. Comp. Stat. 5/26-1(a)(4). Illinois case law, in particular People v. Stevens, 352 N.E.2d 352 (Ill. App. Ct. 1976), establishes that either written or oral reports may satisfy the element of a "report" in the statute. Id. at 354.

Sparing attempts to distinguish Stevens, while at the same time advancing his second argument, by stating that the defendant in Stevens reported a "robbery." He argues that he only relayed information to Keith about what he had seen and never stated that an "offense" had been committed. This is a fanciful interpretation of both Stevens and the disorderly conduct statute. The plain language of the statute is not limited to false reports of an offense, as Sparing argues, but covers false reports "to the effect that an offense . . . has been committed." 720 Ill. Comp. Stat. 5/26-1(a)(4). When Sparing told Keith that he had seen Sanfratello in the office copying files from a computer and photocopying, it was to corroborate Smith's accusation of theft and trespass. Clearly, the report had the effect of

falsely conveying to a police officer that an offense had been committed.

Thus, Keith was also appropriately entitled to summary judgment for Sparing's Fourth Amendment probable cause claim under section 1983.

B. Malicious Prosecution

Sparing argues that for the reasons articulated in his probable cause discussion addressed above, the district court wrongly granted summary judgment to the Village and Keith on his state law malicious prosecution claim. Because we have disposed of his arguments on probable cause, Sparing is left empty-handed. However, we will address this issue because we uphold summary judgment on the second ground offered by the district court. We review this claim, like the others, de novo.

We are not convinced, as was the district court, that because probable cause existed for the offense of disorderly conduct, Sparing could not maintain a state law malicious prosecution cause of action for resisting or obstructing a police officer--the offense actually charged. We are aware of no Illinois case that adopts the closely related offense rule, which we apply in qualified immunity cases, in state law malicious prosecution tort cases. Therefore, we do not rest our opinion on this ground.

However, Illinois law does require that the criminal proceeding upon which a malicious prosecution action is predicated was terminated in a manner indicative of the innocence of the accused. Joiner v. Benton Cmty. Bank, 411 N.E.2d 229, 232 (Ill. 1980). The record is silent on this issue, except for Keith's assertion in his deposition that the case was dismissed for lack of a warrant (hardly indicative of Sparing's innocence). At summary judgment, Sparing had an obligation to come forward with evidence to support his claim and could not merely rest on the allegations in his complaint. See Fed. R. Civ. P. 56(e). He failed to do so. Therefore the Village and Keith were appropriately entitled to summary judgment for Sparing's state law malicious prosecution claim./8

III.  CONCLUSION

   For the foregoing reasons, the judgment
of the district court is Affirmed.

FOOTNOTES

/1 In his deposition, Keith indicated that he ar-
rested Sparing for obstructing a police officer,
although he also had in mind the offense of
disorderly conduct.

/2 Sparing voluntarily dismissed his claim against
Officer Bendar.

/3 Other courts have reached similar conclusions.
See United States v. McCraw, 920 F.2d 224, 228-30
(4th Cir. 1990); Duncan v. Storie, 869 F.2d 1100,
1103 (8th Cir. 1989); United States v. Herrold,
772 F. Supp. 1483, 1489-90 (M.D. Pa. 1991). But
see United States v. Carrion, 809 F.2d 1120,
1127-28 (5th Cir. 1987); United States v. Whit-
ten, 706 F.2d 1000, 1015 (9th Cir. 1983).

/4 Berkowitz actually states this proposition using
the words "and the person acquiesces to the
arrest." 927 F.2d at 1386 (emphasis added). The
issue, however, is whether the entry is consis-
tent with the Fourth Amendment, not the arrest
(which is lawful because supported by probable
cause). Despite the language used in that partic-
ular sentence, we believe the holding in Berko-
witz identified the entry as the constitutional
violation, not the arrest, and therefore we use
the former, not the latter.

/5 Watson actually was arrested in a restaurant.

/6 Sparing presents an additional Fourth Amendment
argument based on the Illinois resisting arrest
statute: Sparing argues that he was required by
Illinois law to acquiesce to Keith's entry to
complete the arrest, and if he resisted by not
acquiescing to the entry, he was subject to
additional charges for resisting arrest. He
argues that if he acquiesced, the Illinois stat-
ute compelled his acquiescence and as a conse-
quence that acquiescence is constitutionally
defective. Having decided that Berkowitz does not
apply, we need not consider this issue.

/7 The district court did not find probable cause
for the charge of obstructing a police
officer--the offense for which Sparing was ar-
rested and charged--because Sparing's conduct
could not be considered physical obstruction,
which is a necessary element of the offense. See
People v. Hilgenberg, 585 N.E.2d 180, 183 (Ill.
App. Ct. 1991). But the district court continued
to consider whether probable cause existed for

disorderly conduct because "probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge." Biddle v. Martin, 992 F.2d 673, 676 (7th Cir. 1993).

/8 We do not reach the issues of damages raised on this appeal, because we affirm the district court's grant of summary judgment in favor of the Village and Keith on all counts alleged in the complaint.