595 N.W.2d 827 (1999)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Eric Rural HANNA, Defendant-Appellant.
Docket No. 109985, COA No. 183094.
Supreme Court of Michigan.
June 8, 1999.
On order of the Court, the motion for reconsideration of this Court's order of June 30, 1998 is considered, and it is DENIED, because it does not appear that the order was entered erroneously.
We deny leave to appeal in this case because the Court of Appeals properly applied the "objective reasonableness" test set forth in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and Forrester v. San Diego, 25 F.3d 804 (C.A.9, 1994). The officers used a reasonable amount of force in light of the surrounding facts and circumstances.
*828 This conclusion is well supported by the Court of Appeals reasoning:
[T]he lab technician testified that he could not have safely drawn defendant's blood unless defendant ceased his combative conduct. Indeed, were he not pacified, defendant could have injured himself or others by causing the needle to inadvertently lacerate or break. With the obvious harm inherent by [sic] a misdirected or broken needle, the police were legitimately concerned about subduing defendant in order to facilitate the safe and effective execution of the warrant. Otherwise defendant could have caused injury and thwarted the execution of the warrant.
Moreover, the officers used the Do-Rite sticks for only a few seconds and defendant was not injured. In light of the circumstances, the officers' limited and measured use of the Do-Rite sticks in this case satisfied the objective reasonableness test set forth in Graham and Forrester.
In his dissent, Justice CAVANAGH suggests that we grant reconsideration and leave, and invite amicus briefs as a means of suggesting to the Legislature possible alternative remedies in this type of situation. Justice CAVANAGH'S dissent fails to address the dispositive issue, i.e., whether the officers' use of the Do-Rite sticks met the constitutional test of objective reasonableness.
Justice CAVANAGH suggests a legislative presumption of intoxication for those who refuse the blood test. This suggestion does not solve the practical problem for all suspects who refuse to give blood. Suppose hypothetically that a murder suspect refuses to give blood that is needed for DNA testing. We doubt that Justice CAVANAGH would support a legislative presumption that the defendant was guilty of murder or that his DNA type matched that of blood found at the murder scene. Justice CAVANAGH has thus failed to provide either a practical solution or a rebuttal to our analysis under the objective reasonableness test.
If this Court were to adopt Justice KELLY'S position, a suspect could avoid a search warrant to test blood alcohol level simply by refusing to cooperate with the medical personnel as they attempted to draw blood. Justice KELLY asserts that the officers induced unnecessary pain to subdue a single unarmed arrestee. This statement suggests that she would prefer the officers to use their bare hands to manhandle the suspect into compliance with the blood test, risking injury, rather than using department-issued tools in which the officers had been trained and which were less likely to produce injury. We reject this suggestion.
Justice KELLY'S dissent also asserts that the police should have used alternative measures, such as hospital restraints, to achieve compliance with the search warrant. Justice KELLY fails to identify a constitutional basis for her stated preference for other measures. This Court should not dictate those law enforcement techniques it prefers absent a constitutional basis for intervention. Because the use of the Do-Rite sticks in these circumstances met the constitutional test of objective reasonableness, our inquiry should end. Justice KELLY'S stated preference for alternative law enforcement measures has no bearing on the constitutional analysis.
Justice BRICKLEY would grant reconsideration and, upon reconsideration, would grant leave to appeal.
Justice MICHAEL F. CAVANAGH dissents, and states:
I know of no other area of law in which we allow the police to use pain coercion where there is no threat of harm to persons or property. Here, the majority is allowing pain coercion/bodily violence to collect evidence. This fuels the situation and converts a non-violent refusal of a blood test into a physical confrontation involving the police, the suspect, and possibly the hospital staff.
*829 I am persuaded the issue presented by this case is significant. A grant, inviting amicus, might provide appropriate alternatives for police officers faced with suspects that refuse to comply with a search warrant. It also might lead us to the conclusion that we could only urge the legislature to address this question and devise a workable alternative, such as allowing for a presumption of intoxication for those who refuse the blood test. This would 1) remove violence from the equation; 2) allow the prosecution to introduce evidence of the defendant's condition; 3) deter a drunk driving suspect from refusing the test (he could at least hope that the blood test would produce a reading low enough to charge him with the lesser crime of impaired driving); 4) protect hospital staff from injury; and 5) lessen the number of suits against the police for civil rights violations.
Accordingly, I would grant reconsideration and, upon reconsideration, would grant leave to appeal.
Justice MARILYN J. KELLY dissents, and states:
I dissent from the Court's order denying defendant's motion for reconsideration, because I believe the denial is in error. This case presents an issue that has broad jurisprudential significance, and the Court of Appeals opinion is published, hence binding on it and lower courts. The issue is whether police use of "Do-Rite Sticks"[1] intentionally inflicting pain to obtain compliance with search warrants is a reasonable search and seizure under both the United States and Michigan Constitutions. I submit that it is not. By denying reconsideration of its denial of leave, this Court allows police, under the circumstances of this case, to engage in a torture tactic to facilitate a search warrant.
The underlying facts of the case are that defendant was apparently operating a vehicle over the speed limit in the City of Sault Ste. Marie when several police officers stopped him. They soon determined that he was driving while intoxicated. After arresting him, they obtained a search warrant to test his blood and took him to War Memorial Hospital to have a sample drawn. Defendant refused to cooperate, however, and the officers squeezed his wrists with Do-Rite sticks. The blood was drawn and testing indicated 0.15 percent weight per volume of ethyl alcohol. This evidence was admitted at the defendant's trial, and he was convicted of OUIL.
At the preliminary examination, one of the arresting officers described the Do-Rites as "a restraining device that we, all members of the department carry now, it's for restraining arms." He said that the defendant "pulled his arm away, that's when we used the do-rites on him- and then he cooperated, and then he couldn't resist us any more at that point." The hospital laboratory technician who drew the blood said that the defendant had refused to cooperate until the police "put his arms into the restraints and held him there."
The second arresting officer testified that defendant was angry and would not cooperate. He stated that he was concerned with safety and used the nunchakus, applying them to the defendant's wrists "with soft hands" for a "few seconds." He applied the nunchakus to a pressure point on the wrist, which caused pain to radiate into defendant's arm. Defense counsel obtained the admission that the officer testifying is a large man who lifts weights and is quite strong.
The first officer described defendant's anger and the ensuing application of the nunchakus. Asked why the nunchakus were used, he responded:

*830 It's a simple way of controlling the subject that is uncooperative, fighting, won't exit the vehicle. They have worked excellently drawing blood from people who aren't cooperating with it.
He also testified that they argued with the defendant for several minutes. He decided to apply the nunchakus because he could not "let a subject argue all evening." He "exerted pressure just a few seconds, just enough to make him cooperate."
The defendant stated that the pain shot up his arms into his shoulders and his wrists were sore for two weeks. He complied with the search warrant to avoid feeling additional pain.
I submit that the evidence obtained against defendant through the use of the Do-Rite sticks should have been suppressed. I believe that the use of this pain-inflicting device to obtain compliance in furnishing evidence for a prosecution violated the defendant's right to be free from unreasonable searches and seizures.[2]Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
Although there is no case directly on point, the United States District Court for the District of Maryland has said, "[o]f course, unreasonable physical violence in administering [a chemical] test would likely not be sanctioned and would likely invalidate the test." United States v. Sauls, 981 F.Supp. 909, 913 (D.Md., 1997).
Police use of nunchakus has drawn attention in other cases. Herrera v. Conner[3] was a 42 U.S.C. 1983 action filed in the wake of an arrest involving a great deal of force. The police used nunchakus on the arrestee's arm. Looking at the circumstances in their entirety, including the use of other forms of physical coercion, the Idaho Court of Appeals said, "We hold that reasonable minds could conclude that excessive force was used." Herrera, supra at 1021, 729 P.2d 1075.
In Johnson v. Panizzo[4], another 42 U.S.C. 1983 case, several officers beat the plaintiff without cause when arresting him. One issue at trial was whether the Joliet Police Department had a policy of encouraging the use of excessive force. Evidence was admitted showing that the department taught and encouraged the use of blackjacks and nunchakus in making arrests. Johnson, supra at 337, 342. The court was persuaded that the plaintiff had produced evidence of a knowing and deliberate indifference to the use of excessive force.[5]
In People v. Bracamonte, 15 Cal.3d 394, 124 Cal.Rptr. 528, 540 P.2d 624 (1975)[6], the police obtained a warrant authorizing the search of a house that the defendant and her husband occupied. The warrant included their vehicles and their "persons." As the police closed in, they saw defendant swallow what they later confirmed were several balloons of heroin. They took her to a hospital emergency room, presented the search warrant and requested that her stomach be pumped. The doctor prepared an emetic solution known as syrup of ipecac. When the suspect resisted, the nurses inserted a rubber tube through her nostril and into her esophagus. After about five minutes, she said that the tube was "too painful," and agreed to drink the emetic. She then regurgitated seven balloons *831 of heroin. She continued to vomit for about ten minutes, and was nauseous for about another fifteen minutes.
The California Supreme Court in Bracamonte said that the search went beyond the scope of the warrant, which authorized only a search of the defendant's "person." The court also found no basis for a warrantless search. Since the police had no warrant, and no basis to proceed without a warrant, the court excluded the evidence. It did not reach the issue whether the circumstances in which the search was carried out violated due process. However, the court observed that "a search, even if justified at its inception, may be unconstitutional by virtue of its intolerable intensity and scope." Bracamonte, supra at 404, 124 Cal.Rptr. 528, 540 P.2d 624.
In the present case, the dissenting Court of Appeals judge quoted from the dissent in Forrester v. San Diego[7], a federal action involving the use of excessive force. The police had applied nunchakus on anti-abortion protestors engaged in passive resistance. While a majority upheld the police action, the Forrester dissenter noted its ineffectiveness and the fact that several persons had been injured. The dissenter observed that the police had been using pain as punishment, rather than as a means to move the demonstrators.
Like the dissenter in Forrester and the dissenting judge in the Court of Appeals, I am persuaded that an unreasonable amount of force was employed in this case. The dissenter in Forrester considered several matters, including (a) whether the use of force was a split-second judgment in response to events at the scene, (b) the severity of the offense, (c) the degree of resistance, and (d) the immediacy of a threat to the officers or others. Using these criteria, the dissenter found no need to apply nunchakus to the passive resisters. Forrester, supra at 810-814. I likewise find that the use of nunchakus is unreasonable where the only difficulty is a person's resistance to having blood drawn.
To be clear, the police in this case had a warrant that authorized a search of the defendant's blood. However, the search was conducted in a manner that was unreasonable because of the application of excessive force in the form of a "pain compliance" device. Judge MacKenzie distinguished in her dissent the constitutionally protected use of force that may cause incidental pain and the constitutionally proscribed direct infliction of pain to coerce desired behavior. She concluded that police used the Do-Rite sticks as a punishment device that "inflict[ed] pain to coerce a person into compliance."[8] The inducement of unnecessary pain by two able police officers to subdue a single unarmed arrestee violates fundamental values that separate this society from less enlightened systems of governance.
It was undisputed that it took a matter of seconds to draw the blood. I do not support allowing a suspect simply to refuse to cooperate. However, the two officers should have been able to restrain the supine defendant for such a brief time without resort to pain compliance devices. I do not advocate manhandling a suspect with bare hands in order to subdue him. The evidence in this case was that hospital restraints were available to hold down Mr. Hanna. In any event, the police are trained in appropriate measures to subdue suspects. While these alternative procedures have the potential to cause incidental pain, they do not directly inflict pain.[9]
As the California Supreme court has stated:

*832 [A] search, even if justified at its inception, may be unconstitutional by virtue of its intolerable intensity and scope. Furthermore, the use of excessive force which shocks the conscience violates due process of law. [Bracamonte, supra at 404, 124 Cal.Rptr. 528, 540 P.2d 624.]
For the reasons enumerated in this statement, I would grant the motion for reconsideration, reverse the judgment of the Court of Appeals, and vacate in part the judgment of the circuit court. I would remand this case for a new trial with an instruction that the circuit court exclude the evidence obtained through the application of the nunchakus to the defendant's arm.
NOTES
[1] "Do-Rite sticks" are nunchakus, a martial arts tool that has two rigid sticks of wood, metal, or plastic, with a flexible connection of chain, cord, or rope. The Sault Ste. Marie police used nunchakus made of plastic, connected with a one-inch piece of rope. The device has many alternative names and spellings, including nonchakus, numchucks, numchucks, nunchucks, kung fu sticks, and karate sticks.
[2] U.S. Const., Amends. IV & XIV, § 1; Mich. Const. 1963, art. 1, § 11.
[3] 111 Idaho 1012, 729 P.2d 1075 (Idaho App., 1986). App. Dis. 112 Idaho 948, 738 P.2d 94 (1987).
[4] 664 F.Supp. 336 (N.D.Ill., 1987).
[5] Evidently, the Joliet Police Department ceased using nunchakus several years later. Smith v. Joliet, 965 F.2d 235, 237 (C.A.7, 1992).
[6] 15 Cal.3d 394, 124 Cal.Rptr. 528, 540 P.2d 624 (1975).
[7] 25 F.3d 804 (C.A.9, 1994).
[8] People v. Hanna, 223 Mich.App. 466, 567 N.W.2d 12 (1997)(Judge MacKenzie, dissenting).
[9] Contrary to the majority's assertion, I am not advocating a rule that police officers use hospital restraints. I am merely pointing out that the police had a variety of constitutionally protected methods from which to choose.