*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL FRANCIS MCGUIRE,

        Plaintiff-Appellee,

v

HIGHLAND TOWNSHIP, OAKLAND COUNTY
SHERIFF'S DEPARTMENT, and OAKLAND
COUNTY,

        Defendants,

and

OFFICER PATRICK BILBEY,

        Defendant-Appellant.

UNPUBLISHED
December 12, 2019

No. 345790
Oakland Circuit Court
LC No. 2017-157497-NO

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant Oakland County Sheriff Deputy Patrick Bilbey appeals as of right an order denying his motion for summary disposition premised on his defense of qualified immunity as to plaintiff's Fourth Amendment claim under 42 USC 1983 of unlawful search and seizure, and granting summary disposition in plaintiff's favor under MCR 2.116(I)(2). We vacate that decision. Defendant also challenges the denial of his motion premised on qualified immunity as to plaintiff's Fourth Amendment claim under 42 USC 1983 of excessive force. We reverse that decision. This matter is remanded for entry of an order consistent with this opinion.

## I. BACKGROUND FACTS

This case arises out of the July 15, 2015 arrest of plaintiff, Daniel McGuire, by Deputy Bilbey and his partner Deputy Erica Mardis following a 911 call placed by plaintiff's neighbor, Philip Siljander, after plaintiff allegedly verbally harassed and threatened to kill Philip in front of his wife, Debi Siljander, and several grandchildren. These neighbors had a longstanding dispute about their property lines and were in litigation to resolve the matter. When the deputies went to

-1-

plaintiff's home to investigate the complaint, plaintiff refused to come out of his house or to discuss this matter. There is a dispute about the events that occurred next, but ultimately plaintiff was arrested and suffered injuries during the process of his arrest.

This lawsuit raising numerous claims followed. Plaintiff admitted in his amended complaint that he pleaded no contest to disturbing the peace, but charges of disorderly person and resisting and obstructing a police officer were dismissed. In Count I, plaintiff alleged that, contrary to 42 USC 1983, defendant violated his Fourth Amendment constitutional right to be free from the excessive use of force when defendant used unnecessary and unreasonable force against him; thus, defendant was not entitled to qualified immunity. In Count II, plaintiff alleged that, contrary to 42 USC 1983, defendant violated his Fourth Amendment constitutional right to be free from unreasonable searches and seizures when defendant opened the door to plaintiff's home and pulled him out of his house to effectuate his arrest; thus, defendant was not entitled to qualified immunity. In Count III, plaintiff alleged gross negligence and, in Count IV, he alleged assault and battery.

During discovery, plaintiff testified in his deposition that defendant came to his door and asked him to step out of his house which plaintiff refused to do. Plaintiff admitted to calling Philip Siljander an "asshole" in a low voice, but denied yelling or stating threats of any kind. Plaintiff testified that he was frightened by defendant's attitude and demeanor so he told defendant he would have to get a warrant before he would come out of his house. Plaintiff testified that eventually defendant opened his screen door, stepped in, and pulled him out of his house by his right arm. Defendant then jammed plaintiff's right arm against the top of plaintiff's deck railing and placed his full body weight against plaintiff's back. With his left hand, plaintiff held on to the railing for support against the weight. Plaintiff denied pulling away or trying to get away. After defendant failed to get plaintiff's arms behind his back to handcuff him, defendant delivered three or four blows with his knee to the outside of plaintiff's right knee which caused plaintiff to fall. Then defendant put his left knee into the middle of plaintiff's back and handcuffed him. Plaintiff testified that he could not walk after that so defendant and his partner picked him up and dragged him to their patrol car. Eventually, plaintiff was taken to the hospital for his injuries. Plaintiff testified that he sustained a compression fracture in his back and tendon injuries to his right knee.

Defendant's partner, Deputy Mardis, testified that they were dispatched to plaintiff's house on a harassing complaint. They spoke to Philip and Debi Siljander who said that plaintiff was in his backyard yelling at Philip, calling him obscene names, and then said "I am going to kill you." Mardis and defendant were walking up to plaintiff's house when Mardis heard plaintiff yelling loudly inside his house and he said "he was going to fuck him up and that he was going to bomb his house." Defendant knocked on the door and eventually plaintiff came out a different door to the house and they walked over to him. Plaintiff was inside the house, behind a screen door, and he refused their requests to come outside. Mardis was not sure who opened the screen door, and did not see plaintiff's arm come outside, but she saw defendant grab plaintiff by his arm and pull him outside. He was under arrest because he was not giving them information, he was obstructing, and for making threats and harassing the neighbor. Mardis testified that she called for backup officers because plaintiff "started pulling and jerking away." Plaintiff grabbed on to the deck railing and was holding on. Defendant kept telling plaintiff that he was under arrest and to stop resisting. Defendant kept trying to pull plaintiff's arms behind his back and

then they fell to the ground. While plaintiff was face down on the deck, he was handcuffed and then escorted to the patrol vehicle while still "pulling and resisting." Mardis testified that plaintiff had a strong odor of intoxicants and his speech was slurred. While plaintiff was not physically aggressive, Mardis testified, he was "verbally aggressive, just screaming and very disorderly, just yelling we can't come talk to him, we don't have a warrant, you know, refusing to give us his information, and he was just like escalating it, just like bringing his tone up, bringing the yelling up."

Defendant testified that they were dispatched for a threats complaint, which means that someone made a threat against a person. They spoke to the Siljanders and then went to plaintiff's house to get his side of the story. His partner, Deputy Mardis was walking a bit ahead of him and told him she heard yelling in plaintiff's house. As they got closer, defendant heard plaintiff "yelling, he was upset with complainants, he stated that they ruined his life because they sued him, he was going to fuck them up and put a bomb in their house." After the yelling stopped, defendant knocked on the door. Plaintiff came out of a different door and defendant identified himself and asked plaintiff to come out and talk to him. Plaintiff shook his head no, and stepped inside his house and closed the screen door. Defendant went to that screen door and saw plaintiff inside. He asked plaintiff to exit his home several times and plaintiff did not. Defendant believed there was a statement made about obtaining a search warrant. Defendant advised plaintiff that he was there to get his side of the story for a threats complaint and plaintiff denied making threats. Because plaintiff was not cooperative, he was told he was under arrest. Defendant opened up the screen door to plaintiff's home but no part of his body was ever in plaintiff's residence. Defendant testified:

> I grabbed the handle, pushed the button, opened the door and [plaintiff] put his arm outside to grab the inside handle of the door, pull it back. At that point I used my left hand and grabbed a hold of his right arm, advised him he was under arrest again and pulled him outside.

Defendant believed that he had probable cause to detain plaintiff for the threats that were made and that defendant heard. And because plaintiff was unwilling to talk to him, defendant could not gauge what plaintiff's mindset was so he made the decision to place him under arrest. Defendant admitted in his deposition that he forcibly removed plaintiff from his home by pulling his arm. But even if plaintiff had not put his arm outside, defendant believed he would not have needed a warrant to remove him because exigent circumstances existed. Defendant testified that those exigent circumstances arose:

> Based on what the complainants advised the sheriff's offices, based upon what I was advised by dispatch on the call, based on the observations that I made at the scene, things I heard, things I seen, the lack of cooperation and the lack of ability to speak with Mr. McGuire about the allegations to gauge his train of thought and his side of the story, I didn't feel comfortable leaving a situation the way it was.

Defendant further testified that, after he pulled plaintiff outside, he had to deliver a common peroneal knee strike so that plaintiff would loosen his grip on the deck railing. Then defendant applied a straight-arm-bar-takedown move to take plaintiff to the ground. While on the ground, plaintiff put his arms under his body and defendant could not get plaintiff's arms out

from under him even though he was giving verbal commands that included: you are under arrest, stop resisting, and put your arms behind your back. When defendant's arm became trapped under plaintiff's body, he put his left elbow into plaintiff's scapula so that he could free his arm. Plaintiff then complied with defendant's commands and he was handcuffed. When asked what the basis was for him using force against plaintiff, defendant testified: "Him actively physically resisting my attempts to handcuff him." When asked to be more specific defendant testified:

> After me advising him that he was placed under arrest, and the several times I instructed him to place his hands behind his back while we were standing on the deck at the railing, I am standing on his right side telling him you are under arrest, put your hands behind your back. When I went to effect the arrest and remove his hand from the railing, he tensed up, grabbed onto the railing, would not release his grip. As I was removing him from the residence he pulled away and started tensing up, pulling back in an attempt to get away from my grip.

> Then after I delivered the common peroneal knee strike and did the right knee bar strike again, instructed him to remove his hand from underneath his body, he was not doing it.

Defendant testified that after plaintiff was transported to the police station, Deputy Mardis advised defendant about bruising or swelling on plaintiff's arm. EMS was called and they requested a breathalyzer on plaintiff. Defendant testified that plaintiff gave a poor sample, but the result was a .20. There were indications that plaintiff was intoxicated including that his cheeks were rosy, his speech was slurred, and he was having trouble keeping his balance. Defendant testified that plaintiff also appeared to be intoxicated when he was in his house at the screen door.

Following these discovery depositions, defendant filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10). Defendant argued that he was entitled to qualified immunity with regard to plaintiff's excessive force and unlawful search and seizures claims brought under 42 USC 1983. First, under the hot pursuit exception, defendant properly reached inside the house and removed plaintiff after advising him that he was under arrest. Second, defendant's actions were objectively reasonable because plaintiff was actively, physically resisting arrest despite defendant's commands and while defendant was trying to handcuff him. Defendant also argued that he was entitled to governmental immunity under MCL 691.1407 with regard to plaintiff's assault and battery claim because he only used the force reasonably necessary to effectuate plaintiff's lawful arrest. Finally, defendant argued, plaintiff's gross negligence claim failed because he could not transform an intentional tort claim of excessive force into a gross negligence claim.

Plaintiff filed an amended response to defendant's motion for summary disposition, arguing that defendant was not entitled to qualified immunity with regard to his excessive force and unlawful search and seizures claims brought under 42 USC 1983. First, it was unlawful for defendant to open plaintiff's door, grab plaintiff's arm, and drag him outside without an arrest warrant. Second, defendant used excessive force against plaintiff who was in full view, was not threatening, had no weapons, and after minimal investigation. Further, plaintiff argued, defendant was not entitled to governmental immunity on his assault and battery claim because he

did not act in good faith when his actions were unjustified. And defendant was grossly negligent by removing plaintiff from his home without a warrant.

Defendant filed a reply brief in support of his motion for summary disposition, arguing that plaintiff voluntarily came to the door and was standing in full view in a public place when he was arrested, i.e., a "threshold arrest," which entitled defendant to qualified immunity. Further, plaintiff was actively resisting arrest, which required that defendant use force to gain control of him and to place the handcuffs; thus, he was entitled to qualified immunity for this claim. For the same reason, plaintiff's assault and battery claim must fail. And his gross negligence claim was impermissibly premised on an intentional tort; thus, it must be dismissed.

After oral arguments, the trial court issued its opinion and order granting in part and denying in part the motion for summary disposition. With regard to plaintiff's Fourth Amendment claim of unlawful search and seizure, the court rejected defendant's argument that he was in hot pursuit and held that he violated plaintiff's clearly established constitutional right by opening plaintiff's screen door—and thereby entering his home—without a warrant. Accordingly, summary disposition was granted in favor of plaintiff under MCR 2.116(I)(2). With regard to plaintiff's Fourth Amendment claim of excessive force, the court noted that both Deputy Mardis and defendant testified that plaintiff was resisting arrest and making threats while in his house, but plaintiff denied both allegations. Considering the evidence in the light most favorable to plaintiff, the court concluded that a reasonable jury could find that defendant violated plaintiff's clearly established constitutional right by using excessive force during the arrest. Therefore, summary disposition was denied. However, the trial court granted defendant's motion as to plaintiff's gross negligence and assault and battery claims. Accordingly, only plaintiff's claim of excessive force would proceed to trial. Defendant filed a motion for reconsideration, which was denied. This appeal by defendant followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). A motion under MCR 2.116(C)(7) should be granted if the plaintiff's claims are barred because of immunity granted by law. *Id.* (quotation marks and citation omitted). The court considers all documentary evidence submitted by the parties, accepting as true the contents of the plaintiff's complaint unless contradicted by documentation submitted by the movant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Pierce v City of Lansing*, 265 Mich App 174, 177; 694 NW2d 65 (2005).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and, therefore, this Court must determine if the plaintiff has stated a claim on which relief may be granted based on the pleadings alone. *Maiden*, 461 Mich at 119. All well-pleaded allegations must be accepted as true and construed in a light most favorable to the nonmoving party. *Johnson v Pastoriza*, 491 Mich 417, 434-435; 818 NW2d 279 (2012). The motion may be granted only when the allegations are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992), mod by *Patterson v Kleiman*, 447 Mich 429, 433-435 (1994).

A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists and the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120. However, if it appears to the trial court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law, it may grant summary disposition to the opposing party under MCR 2.116(I)(2). *Rataj v City of Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014) (citation omitted). "A question of fact exists when reasonable minds can differ on the conclusions to be drawn from the evidence." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009). We also review de novo as a question of law whether a defendant is entitled to qualified immunity. *Morden v Grand Traverse Co*, 275 Mich App 325, 340; 738 NW2d 278 (2007).

## III. ANALYSIS

Defendant first argues that the trial court improperly granted summary disposition in favor of plaintiff on his unlawful search and seizure claim because defendant denied entering plaintiff's home and plaintiff did not have a clearly established constitutional right to privacy while standing in full view behind a screen door. We agree.

A person deprived of a federal right by an individual acting under color of state law, like a police officer, may seek relief under 42 USC 1983. *Id*. at 332; *Walsh v Taylor*, 263 Mich App 618, 635; 689 NW2d 506 (2004). An officer, however, may invoke the defense of qualified immunity to avoid standing trial on such a claim. *Id*. A defendant is entitled to immunity if he did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Kisela v Hughes*, ___ US ___; 138 S Ct 1148, 1152; 200 L Ed 2d 449 (2018) (quotation marks and citation omitted); *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565 (2009) (quotation marks and citation omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela*, 138 S Ct at 1152 (quotation marks and citation omitted). The reasonableness of a defendant's conduct is measured by reference to clearly established laws. *Walsh*, 263 Mich App at 636 (citation omitted). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 US at 231 (quotation marks and citation omitted). Qualified immunity is meant to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v Briggs*, 475 US 335, 341; 106 S Ct 1092; 89 L Ed 2d 271 (1986). Thus, to defeat a claim of qualified immunity, the plaintiff must be able to establish two elements; first, that the facts as alleged make out a violation of a constitutional right and, second, that such constitutional right was clearly established at the time of the alleged misconduct. *Holeton v City of Livonia*, 328 Mich App 88, ___; ___ NW2d ___ (2019) (Docket Nos. 341624, 341847); slip op at 7, quoting *Pearson*, 555 US at 232. These two steps can be analyzed in any order. *Id*. at 236.

It is undisputed that searches and seizures inside a home without a warrant are presumptively unreasonable under the Fourth Amendment. *People v Johnson*, 431 Mich 683, 691 n 5; 431 NW2d 825 (1988). "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

*Kyllo v United States*, 533 US 27, 31; 121 S Ct 2038; 150 L Ed 2d 94 (2001) (quotation marks and citation omitted). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v New York*, 445 US 573, 585-586; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (quotation marks and citation omitted).

Here, defendant argues that—contrary to the trial court's conclusion—he did not enter into plaintiff's home to effectuate plaintiff's arrest; thus, the premise of the trial court's holding to grant summary disposition in plaintiff's favor was erroneous. However, the trial court noted that defendant clearly admitted that he opened plaintiff's screen door and then grabbed plaintiff's arm when plaintiff reached out to pull the door shut. It is apparent that the trial court concluded that opening the screen door constituted unlawful entry into plaintiff's home. We tend to agree with the trial court that defendant "entered" into plaintiff's home when he opened the screen door—which was the only door between plaintiff and defendant. But regardless of whether opening the screen door constituted "entry," we conclude that defendant was entitled to qualified immunity on plaintiff's claim of unlawful search and seizure—contrary to the trial court's conclusion.

Even if the facts as alleged make out a violation of plaintiff's constitutional right to be free from unreasonable search and seizure, such right under the particular circumstances presented in this case was not clearly established at the time of the alleged misconduct. See *Holeton*, ___ Mich App ___, ___; slip op at 7, quoting *Pearson*, 555 US at 232. That is, whether plaintiff was subject to lawful seizure as if he was in a public place while standing at the threshold of his home, behind a screen door and fully visible, is unsettled law. In *United States v Santana*, 427 US 38; 96 S Ct 2406; 49 L Ed 2d 300 (1976), the United States Supreme Court held that the threshold of one's home is a public place for Fourth Amendment purposes because it is not an area where there is any expectation of privacy. *Id*. at 42. The person is not only visible to the public, but "exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id*. And the warrantless arrest of a person in a public place supported by probable cause does not violate the Fourth Amendment. *Id*.

In *McKinnon v Carr*, 103 F3d 934, 935 (CA 10, 1996), the warrantless arrest of a suspect at his home was deemed lawful because after the suspect opened his door to the police, he was visible to the public, standing in the threshold of his doorway when he was arrested. The court concluded that the suspect had no legitimate expectation of privacy. Similarly, in *United States v Mason*, 661 F2d 45, 47 (CA 5, 1981), the warrantless arrest of a suspect at the front door of his home was deemed lawful under the reasoning of *Santana*, 427 US at 42. Likewise, in *United States v Botero*, 589 F2d 430, 432 (CA 9, 1978), the warrantless arrest of a suspect who was standing in the doorway of his home—a public place—was deemed lawful under *Santana*, 427 US at 42. There are numerous cases that rely on the same reasoning to uphold warrantless arrests that occur in the doorway or threshold of a suspect's home.

But there are also cases that strictly adhere to the line of reasoning set forth in *Payton*, 445 US at 590, that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." In *Hadley v Williams*, 368 F3d 747, 750 (CA 7, 2004), the Seventh Circuit Court of Appeals rejected the line of cases "in other circuits which hold that when the front door swings open in response to the knock of the police, the police can, by virtue of the "plain view" doctrine, seize

anything they see through the open doorway, since by opening the door the person who opened it consented to their presence on the threshold."

Similarly, in *Sparing v Village of Olympia Fields*, 266 F3d 684 (CA 7, 2001), the defendant was speaking to a police officer while standing inside his home, behind a screen door, when he was told that he was under arrest and then the officer stepped inside the home to effectuate the arrest. *Id*. at 687. The court held that the officer's actions violated the Fourth Amendment, noting that the defendant stood inside his home behind a closed screen door, and thus, he could not be deemed in a public place so as to surrender his reasonable expectation of privacy; accordingly, the reasoning of *Payton* applied. *Id*. at 688, 690. The court further noted that, without a warrant, the officer could only effectuate this arrest if the defendant opened his screen door and stepped outside or acquiesced to a slight entry to complete the arrest. *Id*. at 690. Likewise, in *United States v Arellano-Ochoa*, 461 F3d 1142 (CA 9, 2006), the Ninth Circuit Court of Appeals held that "[w]here the solid door is open so that the screen door is all that protects the privacy of the residents, opening the screen door infringes upon a reasonable and legitimate expectation of privacy." *Id*. at 1145. "Where the screen door is the only barrier between the inside of the house and the outside, the police cannot open the screen door without consent or some exception." *Id*.

Thus, according to the legal precedent that follows the reasoning in *Santana*, 427 US at 42, one could argue that a person standing in plain view behind a screen door at the threshold of his house is deemed to be in a public place for Fourth Amendment purposes. However, according to the legal precedent that follows the reasoning in *Payton*, 445 US at 590, one could argue that a person standing behind a screen door at the threshold of his house, although in plain view, is still within the confines of his house and has a reasonable expectation of privacy for Fourth Amendment purposes. Therefore, we conclude that even if there was a constitutional violation with regard to plaintiff's arrest, the applicable law is not sufficiently settled for us to conclude that such constitutional right was clearly established at the time of plaintiff's arrest. "The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v Wesby*, ___ US ___, ___; 138 S Ct 577, 590; 199 L Ed 2d 453 (2018). To be considered "clearly established" the "existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id*. at 589 (citation omitted). Here, the constitutionality of defendant's conduct was debatable; thus, defendant did not have fair notice that his conduct was unlawful. See *Kisela*, 138 S Ct at 1152. Accordingly, defendant was entitled to qualified immunity, and thus, summary disposition with regard to plaintiff's Fourth Amendment claim under § 1983 of unlawful search and seizure. The trial court's order granting summary disposition in plaintiff's favor on this claim is vacated.

Next, defendant argues that the force used to effectuate plaintiff's arrest was not excessive and was justified by the facts that plaintiff was resisting arrest by holding onto the deck railing and failing to provide his arms for handcuffing as instructed during his arrest; thus, he was entitled to qualified immunity. We agree.

Again, to defeat a claim of qualified immunity, a plaintiff must be able to establish two elements; first, that the facts as alleged make out a violation of a constitutional right and, second, that such constitutional right was clearly established at the time of the alleged misconduct.

*Holeton*, ___ Mich App ___, ___; slip op at 7, quoting *Pearson*, 555 US at 232. The constitutional right at issue here is the right to be free from excessive force during an arrest. That is, the police must act reasonably when arresting a person; using "excessive force" is unreasonable and a violation of the Fourth Amendment. *Graham v Connor*, 490 US 386, 388, 394-395; 109 S Ct 1865; 104 L Ed 2d 443 (1989). In determining whether the force used to effect an arrest was "reasonable" under the Fourth Amendment, a court must consider the totality of the circumstances surrounding the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. Courts consider excessive force claims under an "objective reasonableness" standard. *Id*. at 388. That means that the reasonableness of the use of the force at issue "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396; see also *People v Hanna*, 459 Mich 1005; 595 NW2d 827 (1999). A police officer effectuating a lawful arrest may use reasonable force if the suspect resists. *Tope v Howe*, 179 Mich App 91, 106; 445 NW2d 452 (1989).

In this case, it is undisputed that force was used to effectuate plaintiff's arrest. Plaintiff was removed from his home by defendant pulling him out by his right arm. Because plaintiff was under arrest and admittedly refused to come out of his house, pulling plaintiff out of his house by his arm was objectively reasonable. Deputy Mardis testified that once plaintiff was pulled outside of his house, she had to contact dispatch and request backup officers because of plaintiff's behavior. Defendant also testified that he told Deputy Mardis to call for backup officers while he was trying to arrest plaintiff because of plaintiff's behavior. And plaintiff testified that four or five patrol cars actually came to the scene during his arrest. Thus, it is undisputed that several officers were dispatched to plaintiff's home when defendant was trying to arrest plaintiff. Clearly, if plaintiff had been cooperative and submitted to his arrest there would have been no need for several backup officers to have been sent to plaintiff's house at the time of his arrest.

In any case, plaintiff denied "resisting" his arrest but admitted that when defendant had him up against his deck railing, plaintiff was holding onto the deck railing with his left hand. In other words, plaintiff admittedly did not present his wrists to defendant for handcuffing although he knew that he was under arrest. And plaintiff did not testify that he indicated in any way to defendant that he was willing to submit to his arrest or present his wrists for handcuffing. While plaintiff claimed that he was trying to support himself against defendant's weight on his back, a reasonable officer in that situation would conclude that plaintiff was holding on to the deck railing in an effort to resist being handcuffed. See *Graham*, 490 US at 396. Defendant testified that, in an effort to get plaintiff to loosen his grip on the deck railing, he delivered a peroneal knee strike and then applied a straight-arm-bar-takedown move to take plaintiff to the ground. When plaintiff was on the ground, he still did not put his arms behind his back for handcuffing. Defendant testified that he gave verbal commands to plaintiff that included that he was under arrest, to stop resisting, and to put his arms behind his back. Plaintiff admitted that defendant was probably giving him verbal commands, but he could not recall what they were. Defendant testified that he then put his left elbow into plaintiff's scapula in an effort to free his own arm which was stuck under plaintiff's body and it was at that point that plaintiff complied with defendant's command and he was handcuffed.

Considering the undisputed facts in this case, defendant did not violate plaintiff's constitutional right to be free from excessive force during his arrest. Objectively reasonable force was used under the circumstances presented to defendant at the time of plaintiff's arrest. When considered from the perspective of a reasonable officer on the scene, plaintiff was ignoring the fact that he was arrested and was refusing to be handcuffed by defendant. Both defendant and Deputy Mardis testified that plaintiff smelled of intoxicants and appeared to be intoxicated, which was later confirmed with a breathalyzer test. While plaintiff claimed that he was not "resisting," his actual, admitted behavior would lead a reasonable officer to conclude that he was actively resisting arrest. Thus, defendant was entitled to employ reasonable force to gain control of plaintiff and handcuff him. The force defendant actually used was reasonably calculated to achieve those objectives and nothing more. See *Rudlaff v Gillispie*, 791 F3d 638, 642 (CA 6, 2015). In other words, no gratuitous or excessive force was used against plaintiff. Once plaintiff was able to be handcuffed, he was promptly escorted to the patrol vehicle. Simply stated, plaintiff failed to establish that a genuine issue of material fact existed on the issue whether defendant used excessive force to effect plaintiff's arrest. Considering the undisputed evidence in the light most favorable to plaintiff, no reasonable juror could conclude that defendant used excessive force. See *Pierce*, 265 Mich App at 177. Accordingly, defendant's conduct did not violate the Fourth Amendment and he was entitled to qualified immunity, and thus, summary disposition with regard to plaintiff's claim under § 1983 of excessive force. The trial court's order denying defendant's motion is reversed.

Vacated in part, reversed in part, and remanded for entry of an order granting defendant's motion for summary disposition of plaintiff's Fourth Amendment claims under § 1983 of unlawful search and seizure and excessive force. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro

-10-